## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| **PRIVILEGE UNDERWRITERS RECIPROCAL EXCHANGE a/s/o GARY LIFTON and DANIELLE QUELLER LIFTON,** | § § § § § | |
| *Plaintiff,* | § § | **CIVIL ACTION NO. 0:24-cv-60855-DSL** |
| **vs.** | § § § | |
| **UNITED VAN LINES, LLC, a foreign limited liability company, and ARMSTRONG RELOCATION FLORIDA, LLC, a Florida limited liability company,** | § § § § § § | |
| *Defendants.* | § § | |

## DEFENDANTS UNITED VAN LINES, LLC AND ARMSTRONG RELOCATION FLORIDA, LLC'S
## JOINT MOTION TO DISMISS AND BRIEF IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

United Van Lines, LLC ("United") and Armstrong Relocation Florida, LLC ("Armstrong") (collectively the "Defendants") file this Motion to Dismiss Plaintiff's Original Complaint (Dkt. 1-1 at 4-8; hereinafter, the "Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  Plaintiff sues

---

[1] United, by complying with the Court's Order and filing this Joint Motion to Dismiss today, is not waiving any right to respond to Plaintiff's Motion to Remand (Dkt. 20). United expressly reserves it right to respond to the Motion to Remand separately from this Joint Motion to Dismiss.

Armstrong for negligence (Count 1) (*see* Dkt. 1-1 at 4-10, ¶¶16-20) and United for negligence (Count 2). *See* Dkt. 1-1 at 4-8, ¶¶21-25.

However, because Plaintiff seeks damages for loss and/or injury to property transported in interstate commerce by United, Plaintiff's state and/or common law claim(s) against United are completely preempted by federal law—namely by the Carmack Amendment to the Interstate Commerce Act (the "Carmack Amendment"), 49 U.S.C. § 14706, *et seq.*

Additionally, because at all times when United was providing interstate transportation services, Armstrong was acting as United's disclosed household goods agent, all claims against Armstrong related to United's interstate transportation, are barred by 49 U.S.C. § 13907(a).

Moreover, because Plaintiff's negligence claim against United is directly related to the services of United with respect to the interstate transportation of property, Plaintiff's negligence claim against United is preempted by another federal statute—namely, the Federal Aviation Administration Authorization Act ("FAAAA"), codified at 49 U.S.C. § 14501(c)(1).

Accordingly, Plaintiff's state and/or common law claim(s) against United, including Plaintiff's claim for negligence, should be dismissed with prejudice as preempted by federal law; and to the extent Plaintiff seeks damages stemming from United's interstate transportation services, all claims against Armstrong

related to United's interstate transportation services, should be dismissed under 49 U.S.C. § 13907(a).  In support thereof, Defendants show the Court the following:

<u>BACKGROUND</u>

This case concerns the interstate transportation of household goods owned by the Liftons.   Following United's interstate transportation of the Liftons' household goods from Florida to California, the Liftons filed a claim for property damages with United.  Specifically, on January 30, 2024, Plaintiff provided United with a "Notice of Claim" attaching multiple documents in support, including, but not limited to, United's Bill of Lading No.: 71-71011-1, which United issued for the 2021 interstate transportation of Plaintiff's insured's household goods and personal property from Florida to California. *See* Dkt. 1-5. Armstrong is identified on the Bill of Lading as the booking and origin agent of United.  *Id.* at p. 3. The Liftons did not file any claim with United until January 30, 2024, and never filed any claim under any other interstate bill of lading issued by United.

Dissatisfied with United's claim settlement offer,  the Liftons then filed a claim with their insurer (Plaintiff) regarding the household goods that had been transported from Florida to California by United. *See* Dkt. 1-1 at 4-8, ¶12 ("LIFTON timely notified PURE, the insurer of the incident and resulting damages."). Plaintiff subsequently issued payment to the Liftons for the covered loss. *See* Dkt. 1-1 at 4-8, ¶13.   Plaintiff now sues United and Armstrong in subrogation for this

same claim, which was made *after* the Liftons' property was transported interstate by United from Florida to California; and Plaintiff seeks recovery of damages that Plaintiff paid to the Liftons. *See* Dkt. 1-1 at 4-8, ¶14.

Plaintiff brings two state-law claims for negligence, one against United and one against Armstrong to recover damages occurring to household goods shipped in interstate commerce by United.  *See* Dkt. 1-1 at 4-8, ¶¶21-25.  Importantly, and it cannot be reasonably challenged that, the only involvement by United concerning the Liftons' household goods was pursuant to interstate bills of lading issued by United.  *See* Dkts. 1-7, 1-8, 1-9. Plaintiff's claims concern United's 2021 interstate shipment of the Liftons' household goods from Florida to California.  *See* Dkt. 1-4 (Affidavit of Corey Meyers) (discussing United's 2021 bill of lading concerning Liftons' move from Florida to California [Dkt. 1-5]).

Prior to this 2021 move, the Liftons' household goods were stored by Armstrong in Florida, after being picked up and brought there by United.  *See* Dkt. 1-1 at 4-8, ¶¶8-9.  And prior to this storage, United initially picked up the Liftons' household goods from their residence in Florida, with the intention that United would move the household goods interstate from Florida to locations in New York.  *See* Dkt. 1-1 at 4-8, ¶¶8-9; s*ee also* Dkt. 1-6 (Affidavit of Alex Herrera) (discussing United's bills of lading concerning Liftons' initially intended move from Florida to Southampton, New York [Dkt. 1-7] and/or Manhattan, New York

[Dkt. 1-8]).  Ultimately, only a portion of the goods were transported and delivered to a location in New York. The remainder of the goods remained in Florida in storage at Armstrong's warehouse facility. Years later, the Liftons requested that the goods be picked up and transported out of Armstrong's Florida warehouse facility to California, and in 2021 United transported the Liftons' household goods from Florida to California. *See* Dkts. 1-8, 1-7, 1-5. As discussed below, all services provided by United, including initial pick up from Plaintiff's residence in Florida, storage-in-transit in Florida, interstate transportation to New York, and interstate transportation to California, occurred during United's *interstate* transportation.

## SUMMARY OF ARGUMENT

Plaintiff's state and/or common law claim(s) against United, including Plaintiff's claim for negligence, is completely preempted by the Carmack Amendment. The Carmack Amendment is a comprehensive regulatory act setting forth the basis for an interstate carrier's liability for loss and/or damage to property occurring as a result of a motor carrier's alleged failure to discharge its duty with respect to any part of the interstate transportation. *New York, P. & N. R. Co. v. Peninsula Produce Exch. of Maryland*, 240 U.S. 34, 38 (1916).  For over one-hundred years, the United States Supreme Court has interpreted the Carmack Amendment as preempting state law claims arising in the whole "subject of interstate shipments." *Atchison, T. & S.F. Ry. Co. v. Harold*, 241 U.S. 371, 377-78

(1916).  In actions seeking damages for loss or damage to property shipped in interstate commerce by a carrier under a receipt or bill of lading, the Carmack Amendment is the shipper's sole and exclusive remedy.  *See Hoskins v. Bekins Van Lines, LLC*, 343 F.3d 769, 778 (5th Cir. 2003).   Because Plaintiff seeks such damages here against United related to United's intestate transportation services, Plaintiff's only viable claim against United is a Carmack claim and Plaintiff's claim for negligence against United is preempted by the Carmack Amendment.

Additionally, because at all times that United was providing interstate transportation services, Armstrong was acting as United's disclosed household goods agent, all claims against Armstrong related to United's interstate transportation services, are barred by 49 U.S.C. § 13907(a).

Furthermore, Plaintiff's negligence claim against United is also preempted by another federal statute—namely, the Federal Aviation Administration Authorization Act ("FAAAA"), codified at 49 U.S.C. § 14501(c)(1).  This is because the negligence claim against United is directly related to the services of United with respect to the transportation of property.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language must, on its face, demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## <u>ARGUMENT AND AUTHORITIES</u>

1.    **Plaintiff's state and/or common law claim(s) against United, including Plaintiff's claim for negligence, is completely preempted by the Carmack Amendment.**

Plaintiff's claim for negligence against United is preempted by the Carmack Amendment and should be dismissed with prejudice.  In 1906, Congress enacted the Carmack Amendment to create a national policy regarding an interstate carrier's liability for property loss or damage.  *New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 131 (1953).  The liability of motor carriers regulated by the Surface Transportation Board for loss and damage arising from an interstate shipment is exclusively governed by the Carmack Amendment. 49 U.S.C. § 14706, *et seq.*; *Hoskins v. Bekins Van Lines, LLC*, 343 F.3d 769, 778 (5th Cir. 2003).  Under the Carmack Amendment, a shipper may only recover for the actual loss or damage to property caused by an interstate carrier.  49 U.S.C. § 14706.  The Carmack Amendment provides, in relevant part, as follows:

> (1) Motor Carriers and Freight Forwarders. – A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part.  That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or 105 are liable to the person entitled to recover under the receipt or bill of lading.

49 U.S.C. § 14706(a)(1) (emphasis added).

Since its enactment, Carmack has been found to have fully occupied the field of interstate carrier liability for loss or damage to goods: "Almost every detail of the subject is covered so completely that there could be no rational doubt that Congress intended to take possession of this subject, and supersede all state regulation with reference to it . . ." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-6 (1913). Indeed:

> [I]t is not disputable that what is known as the Carmack Amendment to the act to regulate commerce… was an assertion of the power of Congress over the subject of interstate shipments, the duty to issue bills of lading, and the responsibilities thereunder, which, in the nature of things, excluded state action.

*Atchison, T. & S.F. Ry. Co. v. Harold*, 241 U.S. 371, 377-78 (1916).  Relying on the reasoning of *Adams Express Co.* and *Atchison*, then the whole "subject of interstate shipments" is regulated by Congress.  *Id.*  The liability of a motor carrier who provides interstate transportation or other service is governed exclusively by the Carmack Amendment.

Congress' intent in enacting the Carmack Amendment was to ensure the uniform application of liability of motor carriers traveling between states, as recognized by the Fifth Circuit, as follows:

> [A] purpose of the Carmack Amendment was to "substitute a paramount and national law as to the rights and liabilities of interstate carriers subject to the Amendment…"  Therefore, we find that the district court correctly held that federal law, via the Carmack Amendment, preempts the [Plaintiff's] state law claims.  To hold

otherwise would only defeat the purpose of the statute, which was to create uniformity out of disparity.

*Moffit v. Bekins Van Lines, Co.*, 6 F.3d 305 (5th Cir. 1993) (upholding the Carmack Amendment's preemption of all of a shipper's state law claims against a motor carrier engaged in interstate transport); *see also Smith v. United States Parcel Service*, 296 F.3d 1244, at 1246 (11th Cir. 2002) ("To accomplish the goal of uniformity, the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods.").

The scope of federal preemption in the area of interstate transport by motor carrier is extremely broad and captures claims involving *any* failure on the part of the motor carrier to fulfill its obligations under the bill of lading contract. For example, in *Adams Express Co.*, the Court held that any state regulation of interstate transportation was preempted by the Carmack Amendment.

> Almost every detail of the subject is covered **_so completely_** that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it… But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist.

226 U.S. at 505-6 (emphasis added) (citations omitted). Indeed, the Carmack Amendment is "comprehensive enough to embrace responsibility for **_all losses_** resulting from **_any_** failure to discharge a carrier's duty as to any part of the agreed transportation…" *Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co.*, 241 U.S.

190, 196 (1916) (emphasis added); *see also Eventus Marketing, Inc. v. Sunset Transp. Co.*, 722 F. Supp. 2d 1311, 1312 (S.D. Fla. 2010) (holding claim arising out of a contract entered into between the parties for interstate transportation of plaintiff's property is preempted by the Carmack Amendment).

Every circuit court that has addressed this issue, including the Eleventh Circuit, has come to the same conclusion. *See, inter alia, Smith*, 296 F.3d at 1246 ("[T]he Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods."); *Air Prods. and Chem., Inc. v. Ill. Cent. Gulf R.R. Co.*, 721 F.2d 483, 486 (5th Cir. 1983); *Intech v. Consd. Freightways*, 836 F.2d 672, 677 (1st Cir. 1987); *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2nd Cir. 1994); *Baker Perkins, Inc. v. Midland Moving & Storage Co.*, 920 F.2d 1301, 1306 (6th Cir. 1990); *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 284 (7th Cir. 1997); *Underwriters at Lloyds of London v. D Lux Van Lines*, 890 F.2d 1112, 1120 (10th Cir. 1989) (en banc); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 705 (4th Cir. 1993).

District Courts in Florida have also recognized that the Carmack Amendment preempts state law claims concerning loss or damage to goods in interstate transportation. *See In Razipour v. Joule Yacht Transp., Inc.*, No. 8:20-CV-729-T-33TGW, 2020 WL 4904456, at *2 (M.D. Fla. Aug. 20, 2020). In relevant part, the *Joule Yacht* Court held as follows:

> The Carmack Amendment, 49 U.S.C. § 14706, "creates a uniform rule for carrier liability when goods are shipped in interstate commerce."

*Smith v. United Parcel Serv.*, 296 F.3d 1244, 1246 (11th Cir. 2002). "The purpose of the Carmack Amendment is to protect shippers against the negligence of interstate carriers and 'to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods.'" *Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 901 F.2d 1034, 1037 (11th Cir. 1990) (quoting *Reider v. Thompson*, 339 U.S. 113, 119, 70 S.Ct. 499, 94 L.Ed. 698 (1950)). "To accomplish the goal of uniformity, the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods." *Smith*, 296 F.3d at 1246; *see also Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06, 33 S.Ct. 148, 57 L.Ed. 314 (1913) (explaining in regard to the Carmack Amendment that "[a]lmost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it."). The Carmack Amendment "preempts virtually any state law claim." *United Van Lines, Inc. v. Shooster*, 860 F. Supp. 826, 828 (S.D. Fla. 1992); *see also UPS Supply Chain Sols., Inc. v., Megatrux Transp., Inc.*, 750 F.3d 1282, 1289 (11th Cir. 2014) (characterizing "the preemptive effect of the Carmack Amendment [as] quite broad"); *U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc.*, 296 F. Supp. 2d 1322, 1339 (S.D. Ala. 2003)("[T]here [is] 'no such thing' as a state law claim against a common carrier for damage to goods in interstate transportation.").

Accordingly, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Hoskins*, 343 F.3d at 773. The Carmack Amendment – not state law remedies – operates to govern the liability of a motor carrier engaged in interstate commerce. Thus, all of Plaintiff's state and/or common law claims against United, including Plaintiff's claim for negligence, should be dismissed with prejudice. Any relief sought by

Plaintiff in its Complaint against United under causes of action other than a single claim arising under the Carmack Amendment for actual loss or damage to household goods is completely preempted by the Carmack Amendment and should be dismissed with prejudice.

     **a.    Plaintiff's claim for negligence against United is completely preempted by the Carmack Amendment.**

As referenced above, the Carmack Amendment preempts claims for negligence. *See Baker v. Allied Van Lines, Inc.*, No. 8:06-CV-1997T24EAJ, 2007 WL 461029, at *2 (M.D. Fla. Feb. 7, 2007). When such claims arise from loss or damage to goods shipped interstate, the court "has no alternative other than to dismiss" the claims. *Id.*; *see also Falcon v. Sunshine Delivering, Inc.*, No. 11-80028-CIV, 2011 WL 13319578, at *1 (S.D. Fla. May 2, 2011) (holding that "the Carmack Amendment preempts [shipper's] common law claims for negligence...").

Here, Plaintiff's claim for negligence against United indeed concerns and arises directly from alleged injury to household goods transported in interstate commerce by United. *See* Dkts. 1-8, 1-7, 1-5. Stated differently, Plaintiff's claim concerns United's interstate transportation services—namely, United packing, moving, and storage-in-transit of the Liftons' household goods in the course of the interstate moves, initially from Florida to New York and then later from Florida to California. *See id.* Indeed, Plaintiff alleges that the goods sustained damage due

to "improper packing, moving and storage…" Dkt. 1-1 at 4-8, ¶11.  And Plaintiff sues United expressly for negligently packing, moving, and storing the goods. *See* Dkt. 1-1 at 4-8, ¶23 (alleging that United "improperly pack[ed] LIFTON's household goods for storage"; and United "improperly mov[ed] LIFTON's household goods to a storage company.").

Notably, based on all bills of lading issued by United concerning the Liftons' goods, United performed its "packing, moving and storage[-in-transit]" services *intending* to move the goods being packed, moved, or stored-in-transit out of state. *See* Dkts. 1-8, 1-7, 1-5.  In fact, all the bills of lading issued by United regarding the Liftons' household goods reflect interstate moves.  S*ee* Dkts. 1-8 (Florida to Manhattan, New York); 1-7 (Florida to Southampton, New York); and 1-5 (Florida to California).  In other words, all goods were intended to be transported by United from Florida to New York.  A portion of the goods were actually moved from Florida to New York, with a portion of the goods remaining in storage at Armstrong's Florida warehouse facility.  Years later, some, but not all of the goods were later transported by United from Florida to California. *See id.*

The Supreme Court has recognized that although a segment of transportation (including storage) may be intrastate, a transaction is still "incident to an interstate journey within the ambit of the Interstate Commerce Act," where the overall transportation is to begin in one state and end in another. *N.Y., New*

*Haven & Hartford R.R. Co. v. Nothnagle*, 346 U.S. 128, 130 (1953); *Texas v. United States*, 866 F.2d 1546, 1556 (5th Cir. 1989) (explaining that the 'fixed and persisting intent' of delivery and transportation when shipping goods determines whether the shipment was interstate); *see also Meyer v. Suitable Movers, LLC*, No. 19-60816-CIV, 2019 WL 3457614, at *3 (S.D. Fla. July 31, 2019) ("Because the Plaintiffs contracted with Suitable Movers to move their goods from Florida to Washington, that shipment—from the moment it left Meyer's home—was conducted under the auspices of the Carmack Amendment.").

Thus, from the moment any of the Liftons' goods left their residence in Florida, the services that United performed with respect to the Liftons' goods were performed under the auspices of the Carmack Amendment.  As relevant here, United's storage-in-transit of goods also constitutes interstate transportation of the goods.  *See* 49 U.S.C. § 13102(23) (defining "Transportation" to include "services related to" the movement of property, which expressly includes "storage."); *see also Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765 (1999) (declining to adopt a narrow construction of transportation because the definition includes storage and services related to the movement of property).

Accordingly, because all services provided by United here pertain to interstate transportation, and because Plaintiff sues United for negligently packing, moving, and storing the goods, Plaintiff's claim for negligence against

United is completely preempted by, subject to, and governed by the Carmack Amendment. Therefore, the Court should dismiss, with prejudice, Plaintiff's state-law claim for negligence against United as preempted by the Carmack Amendment.

### b. Armstrong Has No Liability Separate and Apart from United for all claims stemming from United's interstate transportation services.

As set forth in United's Notice of Removal, this case concerns United's interstate transportation of household goods owned by the Liftons. Dkt. 1, ¶ 1. Following United's interstate transportation of the Liftons' household goods from Florida to California, the Liftons filed a claim under United's Bill of Lading, which apparently went unresolved. *Id.* Plaintiff now sues Armstrong alleging it "improperly packaged, moved, and stored the household goods". *See* Dkt. 1-1, ¶¶10, 16-18. Yet this attempt to assert liability against Armstrong as it relates to the interstate transportation services provided by United, is improper because at all times that United was providing interstate transportation services, Armstrong was acting as United's disclosed household goods agent; and thus, under 49 U.S.C. Section 13907, Armstrong cannot be liable for any damages related to United's interstate transportation.

United was the interstate household goods motor carrier for the 2021 shipment—United's U.S. DOT Motor Carrier Number, and United's Tariff all

appear on the Bill of Lading contract for the interstate shipments, specifically United's interstate shipment designated as United Order Number U0071-71011-1, under which the subject cargo claim was filed.  Dkt. 1-5.  The applicable Bill of Lading clearly identified United as the motor carrier for the Liftons' interstate shipment and Armstrong as United's disclosed household goods agent during all interstate segments of the move. *Id.* At all times related to the portion of the move concerning interstate transportation, all transportation of Plaintiff's household goods and personal property was provided by United, the registered motor carrier operating under DOT No. 077949.  Dkt. 1-5.  Armstrong is identified on the Bill of Lading contract as United's disclosed "BOOKER" and "ORIGIN" agent.  Dkt. 1-5, at p. 3.  Further, the Bill of Lading identifies United as the motor carrier Dkt. 1-5; and Plaintiff admits that the Liftons' retained United, not Armstrong. Dkt. 1-1,¶8.

At all times that United provided interstate transportation services, Armstrong was United's booking and origin agent.  During this time, Armstrong was acting in its capacity as United's disclosed household goods agent under United's federal operating authority as a motor carrier, pursuant to 49 U.S.C. § 13907(a), which provides in relevant part:

> Carriers responsible for agents. – Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services…and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

Thus, under 49 U.S.C. Section 13907(a), United is responsible for the acts and omissions of its agents which relate to the performance of interstate transportation services.  To the extent that Plaintiff proves they are entitled to damages for loss or damage to goods arising out of United's interstate transportation services , which they cannot, Armstrong, as the disclosed household goods agent of United, cannot be liable.  *Oliver v. Atlas Van Lines, Inc.*, 504 F. Supp. 2d 1213, 1216 (N.D. Ala. 2007) (dismissing disclosed agent and finding the motor carrier is the only party which can be held statutorily liable for damage to the interstate shipment); *Marks v. Suddath Relocation Systems, Inc*. 319 F. Supp.2d 746, 752 (S.D. Tex. 2004) ("But if the [plaintiffs] are able to establish that some of their property was lost and damaged while in the possession of Suddath, as alleged in this action, United, as Suddath's disclosed principal, would be the entity liable as a matter of law under the relevant bill of lading.") *Werner v. Lawrence Transp. Sys., Inc.*, 52 F.Supp.2d 567, 568–69 (E.D.N.C.1998) ("Not only does the statutory language impose liability on a motor carrier for the acts and omissions of the carrier's agent, but case law holds that the agent of a disclosed principal cannot be held liable pursuant to a duly issued bill of lading contract.").

Section 13907 relieves United's agent of any liability which may arise under interstate transportation.  *Marks*, 319 F. Supp. at 752.  "Courts have regularly held that the agents of disclosed principals are not liable for damages arising under §

13907(a), and that these agents are not parties to the bill of lading as a matter of law." *See Thornton v. Philpot Relocation Sys.*, No. 3:09-CV-329, 2012 U.S. Dist. LEXIS 6696, at *8 (E.D. Tenn. Jan. 20, 2012) (holding defendant Philpot Relocation was a disclosed household goods agent and cannot be liable for plaintiff's claims); *Wittwer v. North American Van Lines*, Docket No. 05-181-JBC, 2006 WL 8444925 at *2, (E.D. Ky. Jan. 24, 2006) ("Only a disclosed principal-carrier, and not the carrier's agent, is liable under the Carmack Amendment. 49 U.S.C. § 13907(a)."); see also *Kashala v. Mobility Services Int'l*, LLC, No. 07-40107-TSH, 2009 WL 2144289, at *6 (D. Mass. May 12, 2009) (dismissing agent of disclosed principal carrier); *Fox v. Kachina Moving & Storage*, No. 3:98-CV-0842-AH, 1998 WL 760268, at *1 (N.D. Tex. Oct. 21, 1998) (same); *Prince v. United Van Lines, Inc.*, No. 3:96-CV-1084-AH, 1997 WL 53121, at *2-3 (N.D. Tex. Feb. 4, 1997) (same); see also *United Van Lines, LLC v. Lohr Printing*, No. 11-4761, 2014 WL 3556483, at *7-8 (D.N.J. July 18, 2014) (holding agent has no independent liability); *Olympian Worldwide Moving & Storage, Inc. v. Showalter*, No. CV-13-00245-PHX-NVW, 2013 WL 3875299, at *4 (D. Ariz. July 26, 2013) ("[agent of a disclosed principal] would not be a proper defendant with respect to a claim under the Carmack Amendment"); *Werner v. Lawrence Transportation Systems, Inc.*, 52 F. Supp. 2d 567, 568 (E.D.N.C. 1998) ("Not only does the statutory language impose liability on a motor carrier for the acts

and omissions of the carrier's agent, but case law holds that the agent of a disclosed principal cannot be held liable pursuant to a duly issued bill of lading contract.").

Moreover, long-standing federal law states that the agent of a disclosed principal cannot be held liable pursuant to the duly issued bill of lading contract. *See Atlantic & Gulf Stevedores, Inc. v. Reveille Shipping Agency, Inc.*, 750 F.2d 457, 458 (5th Cir. 1985); *Lake City Stevedores, Inc. v. East-West Shipping Agencies, Inc.*, 474 F.2d 1060, 1063 (5th Cir. 1973); *see also Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 860 (2d Cir. 1985) (concluding that agent is not liable if contract made on behalf of its principal is breached because "[w]hen an agent makes a contract for a disclosed principal, it becomes neither a party to the contract nor liable for the performance of the contract.") (citing Restatement (2d) of Agency §§ 320, 328); *Valkenburg v. S.S. Henry Denny*, 295 F.2d 330, 333 (7th Cir. 1961) (in signing the bill of lading as agent for the master of a named ship, the agent sufficiently disclosed the identity of the principal for whom it acted and was therefore not liable).

Plaintiff's attempt to sue United's agent (Armstrong) in connection with United's interstate transportation of Plaintiff's household goods under the 2021 Bill of Lading is misplaced. All such claims arising from United's interstate transportation services are properly directed at United only, not its agent. Thus, as it relates to United's interstate transportation services, Armstrong has no liability separate and apart from United's interstate transportation under 49 U.S.C.

§ 13907(a), and the Court should dismiss all claims against Armstrong concerning United's interstate transportation.

**2.     Plaintiff's Non-Contract Claim for negligence against United is also preempted by the FAAAA.**

Congress passed the Federal Aviation Administration Authorization Act—codified at 49 U.S.C. § 14501(c)(1), commonly referred to as "FAAAA" (phonetically: "F-4-A")—in 1994 intending to preempt states from regulating the trucking industry. *See Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364, 368 (2008). The relevant preemption provision of the statute provides:

> [A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... or any private motor carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1); *see also Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1266 (11th Cir. 2023).

In general, the FAAAA broadly "preempts state regulation of the trucking industry, including state-law private claims." *Enbridge Energy, LP v. Imperial Freight Inc.*, No. CV H-14-2615, 2019 WL 1858881, at *2 (S.D. Tex. Apr. 25, 2019); *see also Aspen*, 65 F.4th 1261, 1267 (affirming dismissal of state tort claims based on "allegations of negligence and gross negligence against a transportation broker for its selection of a motor carrier to transport property in interstate commerce").

The FAAAA has been interpreted to preempt all state law claims against carriers, brokers, and freight forwarders except claims for breach of contract. *HMD Am. f/u/b/o Certain Far E. Underwriters with Fubon Ins. Co., Ltd. v. Q1, LLC*, No. 23-21865-CIV, 2024 WL 167374, at *2 (S.D. Fla. Jan. 16, 2024) (citing *Indep. Serv. Provider, LLC v. Aponte*, 6:21-CV-558-GAP-GJK, 2021 WL 2828323, at *2 (M.D. Fla. May 24, 2021) (noting that "the Supreme Court has already held that the ADA's preemption clause—which has broader scope than the FAAAA's—*does not* preempt breach of contract claims") (emphasis in original) (citing *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29 (1995))).

Accordingly, the FAAAA stands for the proposition that a party cannot maintain a non-contractual state law claim against a carrier, broker, or freight forwarder where the state law claim relates to their service with respect to the transportation of property. *See, Aspen*, 65 F.4th 1261; *HMD*, 2024 WL 167374, at *3.

Here, in support of its negligence claim against United, Plaintiff alleges that "UNITED owed a duty of reasonable care to ensure that LIFTON's property was protected during the packing and moving of their household goods into a local storage facility." Dkt. 1-1 at 7, ¶22. As explained *supra* at §1, United's services here pertain exclusively to interstate transportation. Plaintiff further alleges that United breached its duty of care in the following ways:

> a. By improperly packaging LIFTON's household goods for storage.
>
> b. By improperly moving LIFTON'S household goods to a storage company.
>
> c. By failing to ensure that Lifton's household goods would be stored in a climate-controlled facility.
>
> d. By failing to ensure that Lifton's household goods were protected from water and humidity while being stored at the Loss Location.

*See id*. at ¶23.

All these claims are non-contractual claims against United (a motor carrier). More importantly, and as reflected above, it is apparent that the claims clearly and unquestionably relate to United's interstate transportation services with respect to the transportation of property—namely the alleged packing, moving, and storing of the Liftons' goods for interstate travel. Accordingly, Plaintiff's negligence claim against United is preempted by the FAAAA and should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant this Motion to Dismiss for failure to state a claim upon which relief can be granted and dismiss all of Plaintiff's state and/or common law claims against United, including Plaintiff's claim for negligence, because such claim is completely preempted by the Carmack Amendment and/or because such claim is preempted by the FAAAA. Defendants also request that this Court dismiss all claims against

Armstrong which relate to United's interstate transportation services. Additionally, Defendants request such other and further relief to which Defendants show themselves to be justly entitled.

Any relief sought by Plaintiff in its Complaint against United other than a single claim arising under the Carmack Amendment for actual loss or damage to household goods is completely preempted by the Carmack Amendment and should be dismissed with prejudice.

Dated: June 14, 2024

Respectfully submitted,

*s/Bridgette M. Blitch*
BRIDGETTE M. BLITCH, ESQUIRE
Florida Bar No.: 064969
**BLITCH WESTLEY BARRETTE, S.C.**
9100 Conroy Windermere Road, Suite 200
Windermere, Florida 34786
Telephone: (407) 574-2835
Facsimile: (608) 829-2982
Primary:  bblitch@bwesq.com
Secondary: jsybert@bwesq.com
Third:  mmock@bwesq.com

*/s/ Emileigh S. Hubbard*
Vic H. Henry, *admitted pro hac vice*
TBA No. 09484250
vhhenry@hoaf.com
Emileigh Hubbard, *admitted pro hac vice*
TBA No. 24076717
ehubbard@hoaf.com
**HENRY ODDO AUSTIN & FLETCHER,**
 **a Professional Corporation**
1717 Main Street, Suite 4600

Dallas, Texas 75201
Telephone: (214) 658-1900
Facsimile: (214) 658-1919

**ATTORNEYS FOR DEFENDANT
UNITED VAN LINES, LLC**

*/s/ Erica Conklin Baines*
Erica Conklin Baines
Florida Bar No. 58121
**HUSCH BLACKWELL LLP**
120 South Riverside Plaza, Suite 2209
Chicago, IL 60606
(312) 526-1551
erica.baines@huschblackwell.com

Joseph T. Baratta
HUSCH BLACKWELL LLP
2415 E. Camelback Road, Suite 500
Phoenix, AZ 85016 4288
Direct: 480-824-7893
Joseph.Baratta@huschblackwell.com

**ATTORNEYS FOR DEFENDANT
ARMSTRONG RELOCATION,
FLORIDA, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, on June 14, 2024, a true and correct copy of the foregoing document was served on the following counsel of record via the court's electronic service system:

Theodore A. Stevens, Esq.
Florida Bar No.: 92075
Mary Grecz, Esq.
Florida Bar No.: 115969
Daniel Platzek, Esq.

Florida Bar No.: 1031714
DERREVERE STEVENS BLACK & COZAD
2005 Vista Parkway, Suite 210
West Palm Beach, Florida 33411
Telephone: (561) 684-3222
Facsimile: (561) 640-3050
tas@derreverelaw.com
mgrecz@derreverelaw.com
dplatzek@derreverelaw.com
*Attorneys for Plaintiff*

*s/Bridgette M. Blitch*
BRIDGETTE M. BLITCH, ESQUIRE
Florida Bar No.: 064969
BLITCH WESTLEY BARRETTE, S.C.
9100 Conroy Windermere Road, Suite 200
Windermere, Florida 34786
Telephone: (407) 574-2835
Facsimile: (608) 829-2982
Primary:  bblitch@bwesq.com
Secondary: jsybert@bwesq.com
Third:  mmock@bwesq.com